The question in this case is whether his July 2011 letter to the state post-conviction court can be considered a properly filed tolling motion. Did the letter collaterally attack his conviction or sentence, or did it simply ask for a reinstatement? Judge, I mean, he had about three weeks before asked to withdraw his plea, his motion, and then apparently he found out some other information. This is what he said in his plea. Oh, but tell us what's in the, what does the letter say? He just said he wants to reinstate the motion. And that's all it says? I believe that's correct, yes, because he said his attorney had given him bad advice. And the docket, he wrote it in a letter form, there's no question about that. The docket shows, it lists it as a motion, the docket entry, I think it's 233, lists it as a motion. And so I think the main question is suppose he had been successful, suppose the court had reinstated his right to pursue his post-conviction motion. Right. Would that satisfy what you have to do to get relief? That's a very good question. What I was going to say, I think one of the kind of unspoken issues is if the court had reinstated his motion, whether that would relate back to whatever, it would be like a motion for reconsideration really, you know, in a regular case, so that it would relate back to whatever he had said in the original motion. So that's what I think he was trying to do. And so I think that it would have just gone forward from that point. But in a motion for reconsideration, obviously the court has already made an initial decision. Did the court ever make any decision on his petition? That's another good question. No, and I think that's another important issue because ironically I think that R2's case, when Justice Scalia talks about what has to be properly filed, but there really isn't, from the cases I read, not discussion of who and when decides that. And so I think Judge Hinkle in the Dieter case made a very good point that you can't have, or you shouldn't anyway, have no action on a case. And years later they say, oh, it wasn't properly filed. So this just sat there. Whether the court or the judge knew it was there, I don't know. It was docketed. So there needs to be some way of timely addressing these things. I think that, again, that's the point Judge Hinkle made. And so if the state had responded and said at that time this was not properly filed, this is a letter, we're not supposed to do that, then at least that would have been brought to the court's attention. But this way nothing happened at all. And that's why he filed the motion, petition for a belated appeal, which really I don't think is at issue here, but that was why he then took, at least I believe that's why he took that step on his own some months later to get the thing moving. Then it got sent back to the court again, and then it was denied. Well, you have there's at least one Florida Supreme Court case that addresses a petitioner's request to reinstate his or her motion after withdrawing it and addresses it on the merits. Do you think that case is helpful in any way to your position? I'm not sure what case that is, to be honest with you. It's Trease, T-R-E-A-S-E versus state. The citation's 41, Southern's third, 119, and it's a Florida Supreme Court case from 2010. And in that case the petitioner had filed a motion or made a request to waive post-conviction proceedings and counsel, was granted, then filed a motion to withdraw that waiver and start everything back all over again. The state trial court denied it. And then because it was a capital case, it went straight up to the Florida Supreme Court, and the Florida Supreme Court denied relief but did so on the merits of the motion. In other words, that the request to reinstate on the merits wasn't a meritorious one, and that the state trial court had denied correctly the motion to reinstate. But it doesn't at all suggest that you can't have one of those motions filed. I think if it's all right with the court, if I read that case, and maybe I can supplement to answer your question. No, if we need supplemental briefing from either side, we'll let you know. But there is that one case out there. What I was going to say was, as I think you're pointing out, there's a distinction in Artisa between deciding something on the merits and deciding whether it's proper. I think that's what Justice Scalia was saying, what's properly filed. It's not an issue of whether the claim is valid or not. And so in this case, the issue was being properly filed. And I was going to say, not that necessarily the docket is the be-all and end-all, but the fact that it was listed on the docket wouldn't have put Mr. Cantu in notice that it wasn't properly filed, if you see what I'm saying. And since no one came back to him, again, the case law is a little confused as to who has a duty or anyone to say, oh, no, that wasn't correct, but at a minimum, as Judge Hinkle said, I don't think it's really helpful to anybody to wait until years later to have to somehow debate. In other words, there should have been some process at that time to allow him,  and he should have had that opportunity if it wasn't properly filed to right at that time correct it, and then it would have been hopefully properly filed. And there are cases about that. The district court of appeal remanded the matter to the state trial court for it to rule on his letter motion, right? Yes, but that was later, yes. No, I know. Okay, yes. But at first, the letter motion, whatever it was, was not acted upon. That's correct. Right, for a while. It was just sitting there, yes. Right, and then when he went up to the district court of appeal, that court remanded it for the state trial court to take some action on the letter motion. That's exactly right, and the court of appeal said, you know, we don't have an appeal pending, so that, yes. Right, because there hadn't been an order from below. Right, nothing had happened. That's what I'm saying. So, I mean, I understand the courts often get letters from inmates, so it's not totally surprising that maybe they say, well, this is just a letter, but it did not say that on the docket. And so, you know, I think something, again, I'm not sure whose duty it is, but to have something to sit there with nothing happening at all, and then to somehow, while the time is going by for his deadline to file, I think that was probably where the problem happened. And I just want to clarify one more thing. Even at the hearing where he withdrew his motion and the judge said to him, you know, I don't want you coming back with a letter in three weeks and saying you want to, even with that, I mean, his letter did explain why he was doing that, that he felt like he had been given bad advice by his attorney, and he wouldn't have theoretically known that at the time the judge said to him, I don't want you coming back with a letter. So I think he probably thought coming back with a letter possibly was what he was supposed to do, you know. Let me ask you a related question, and it may be a little bit unfair, and this is one that I might ask you for supplemental briefing on. It's not in the COA, but it's something that follows if the COA question is decided in your favor. The state trial court denied the motion to reinstate, right? Even if that letter motion told the period for filing a habeas petition, how has Mr. Cantu exhausted his ineffectiveness claims if that motion to reinstate was denied? To be honest, I don't know. I'd have to answer the question. I don't know. Right, because it's one thing to say – I mean, wouldn't that be on the merit – that's a very good question. Well, it's not merits. It's procedural, right, because if – that's why I acknowledge that it's a partially unfair question, but I'm going to ask your colleague the same thing because it's one thing to say that the letter motion may have told a statutory period, right, because it was properly filed under your theory, but that doesn't mean that we get to review the state trial court's denial of that letter motion, and if the denial of that letter motion is accepted as correct under state law, then that means that he never pursued his ineffectiveness claims through the state court process. I don't know if that's in the record. No. Yeah. I was going to say that the only possible answer I could give you right now without further research is that the state's response was just on the limited issue of timeliness, so they did not address it. Understood. Understood. That's why it may not have been apparent. It was a very good question. I give you credit for that. I wish I had a better answer. We try to get paid for those. We're trying to get an increase in salary for good questions. Okay. I'll give you A-plus on that question. As I said, I'm reflecting, and I've tried to read a lot of these cases, which there are so many of these cases, but it does seem like the question that no one really seems to discuss is when and how do you decide whether it's properly filed? With the idea that this time is running, so it isn't something you can just wait until later to decide because by the time it's decided, he wouldn't have had the opportunity to amend or correct the letter of motion to the extent it was incorrectly filed. There are cases that talk about the court instructed the defendant, you need to amend your petition or whatever, and they do that. Then the time hasn't lapsed. Isn't there possibly a question other than whether it was properly filed, though? That question is what the letter really was, whether it was actually an attack, a collateral attack on his sentence or his conviction, or whether it was just a motion for reconsideration or some sort of attack on his waiver, which are two different things, right? Right. I think that's why I talked about it relating back. I think it would essentially just restart or reopen for consideration the motion which would be on the merits. To me, it would be like a motion for reconsideration where the underlying order would also be at issue, so that's the way I read it anyway. All right. Thank you very much. You saved your time for rebuttal, Ms. Fiddleman. Mr. Tannen. May it please the Court, my name is Jonathan Tannen, representing the Secretary of the Florida Department of Corrections, and we are requesting that the judgment of the District Court be affirmed. Before I get to the merits, Your Honors, I did want to make sure the Court is aware that Mr. Cantu completed his sentence and has been released from custody. I know it doesn't create any kind of a mootness issue under this Court's precedent, but the Court has, I think, noted it in the past when the situation has arisen, so I just wanted to make sure the Court was aware. On the merits, Your Honors, the letter in this case was not a properly filed application for post-conviction or other collateral review within the meaning of Section 2244. There are two problems with the letter in that regard. First, it wasn't an application for collateral review, and secondly, it wasn't a properly filed motion or application under Florida law. As far as the substantive issues, Your Honor, the motion was not a collateral—or the letter, rather, was not a collateral attack on the judgment itself. It only sought reinstatement of the post-conviction proceeding that Mr. Cantu had previously voluntarily withdrawn. Suppose he had prevailed on that, what would have happened? If he had prevailed on the motion? On the reinstatement. I think the Circuit Court would have had to address his motion for post-conviction relief on the merits, presumably. And all of that time would have been told? I don't believe so, Your Honor. I think— Under what theory? Because— You're saying that maybe the State Court got the ruling on the reinstatement wrong, but once it dealt with the merits and ruled against him, how could that not be told time? Well, the problem with the letter, Your Honors, is that it wasn't a collateral attack on the judgment itself. He was trying to—his actual post-conviction proceeding at that point was no longer pending. Once the court grants it, it is pending. The post-conviction proceeding. I mean, I think it would depend on how quickly the court acted on the motion to reinstate. I don't think this court has addressed the question of what happens when a petition for belated appeal or something along those lines is granted. Usually that amount of time doesn't matter. If a State Court grants a petition for a belated appeal, for example, even if it sat on it for three years, it counts, right? So the amount of time that a court might have sat on Mr. Cantu's motion shouldn't be determinative one way or the other, right? Well, I think the problem with the letter in this case was that it wasn't a motion to begin with. That's a different question altogether, but the amount of time that a court waits to rule on something can't be determinative, right? The question is what is the thing. If it's an appropriate tolling motion under the statute, then it doesn't matter how long the State Court waits to rule on it, right? Because if the State Court—if it's an appropriate motion and the State Court waits seven years to rule on it, all that time is tolled. That's correct, Your Honor, but that presumes that the letter itself was actually a tolling motion. Of course, of course, yes. Section 2244. The problem with the motion is that it didn't collaterally attack the judgment itself. In Espinoza v. Secretary of Department of Corrections, this court addressed the very similar circumstance of whether a petition for belated appeal from a post-conviction proceeding that had become final was a tolling motion for purposes of Section 2244, and the court held that it wasn't. In order to be a collateral attack on the judgment, it actually has to go to the merits of the judgment itself or seek an examination or alteration of the judgment and sentence. In this case, that simply isn't what occurred here. And in Espinoza, the court held that with respect to the petition for belated appeal, if the petition for belated appeal had been granted, that wouldn't have actually given the defendant any relief on the merits of the judgments or sentence itself. It would have simply resulted in a reinstatement of the post-conviction proceeding that had previously become final. And the court cited Coley v. Wall, where the Supreme Court also talked about other types of post-conviction motions that aren't themselves collateral attacks on the judgment for purposes of Section 2244. Things like a motion for post-conviction discovery or a motion for post-conviction counsel. These are things that if the relief sought in the motion is granted, it would, I suppose, bring the defendant a step closer to obtaining post-conviction relief. But the motions themselves aren't post-conviction motions. And that was what this court held was true of the petition for belated appeal. It would have resulted in a reinstatement of the post-conviction proceeding and further review of the post-conviction proceeding. But there wouldn't actually have been any relief granted with respect to the judgment itself. And that's exactly the circumstance here. Is there a way for a person in Mr. Cantu's position to toll the statute in this type of a situation? Is there something that he could have done that would have tolled the clock? I think he might have. I don't know if there was anything he could have done under Florida law to toll the motion other than file a new post-conviction proceeding once it had been withdrawn. I mean, at this point, it would have been untimely if he had done that. I think in order to protect his federal habeas rights, if he had wanted to do that, he would have had to file some kind of protective petition in the district court and seek a stay while he tried to pursue his post-conviction remedies in state court. But once the post-conviction proceeding was withdrawn, there was no longer a pending collateral attack in state court that would have tolled his post-conviction application. Do you know how Florida courts would have responded to a secondary petition? I think if it had been timely, I think he might have been able to proceed on it. In this case, it would have been more than two years after the judgment and sentence became final. So he couldn't have done that in this case. I think really the only way he could proceed was by having his Rule 3850 proceeding reinstated. And as the court is aware, the circuit court denied that, and the Second District Court of Appeal affirmed. So I think once he withdrew his petition, there was, as the circuit judge warned him, there was really nothing he could do. But in any event, the— That goes to the merits of whether or not his motion was—letter motion, if you consider it, that was meritorious or not, not whether it tolled. Exactly, Your Honor. I mean the question for our purposes is whether the letter motion was actually a tolling motion for purposes of Section 2244. And under the court's reasoning in Espinoza, it wasn't. It didn't result in any kind of collateral attack on the judgment itself, and it didn't actually make any mention of the underlying merits. What if it had? Would that change your view? If the contents had attacked the waiver but also had said, and by the way, my conviction was unconstitutional for these 15 reasons, would that have been a collateral attack such that— It might have been a collateral attack, but it still wouldn't have been properly filed because it would have been an untimely collateral attack. So for that—so on the face of it, it wasn't a collateral attack, but I'll use that as a segue into the second issue, which is that it wasn't properly filed. Before you get there, to go back to Judge Dubina's initial question, if the state trial court on remand from the District Court of Appeal had taken a different route and granted the letter motion, let him reinstate, what would your position be here today? I think my position—I mean, I'm not aware of any precedent where the court has addressed that specifically. No, I know. I'm asking for help. I think it would still be untimely because there would have been no pending post-conviction proceeding during that time when he was trying to have his post-conviction proceeding reinstated. I mean, that's the problem with the letter, is that it wasn't actually a collateral attack on the judgment itself. I mean, I guess if—it depends on how the court wanted to treat it. If the court determined that the petition for belated appeal or the letter was in effect a notice of appeal, maybe under those circumstances it would be considered a tolling motion from the time it was filed. But again, in order to get there, first the letter— it's entirely hypothetical because the circuit court didn't grant it in this case. So I can't really address fully what would have happened if the circuit court had done that. I think for our purposes, the question is simply whether the letter was itself a tolling motion under Section 2244. And again, under Espinoza, it wasn't. On the issue of whether the letter was properly filed, what the Supreme Court has said is that the term properly filed refers to compliance with applicable laws and rules governing filings, including the form of the document, the time limits upon its delivery, filing fee, and things of that nature. The Supreme Court discussed that in Artuse v. Bennett. And here, the letter on its face didn't comply with any of the requirements for a motion or any type of application under Florida law, let alone an application for post-conviction relief. What didn't it have? It didn't have a designation identifying itself as a motion. But Florida courts have— there are a number of Florida cases in the DCAs treating letters from pro se litigants, including prisoners, as motions. Right, but the court in this case— I mean, I think it might be a different circumstance if the court had actually treated it as a motion. But see, then our decision is based on what the state court does with it? I mean, I think the court can look at the letter itself and see whether it complies with state court requirements in terms of— But what else was missing? It didn't comply with the requirements for a post-conviction filing under Rule 3850. It wasn't under oath. It wasn't, again, submitted within two years of the time that it was filed. And, you know, I would just point out nothing on the face of the letter identified it as a motion that required— The letter was filed within two years? Of the judgment becoming final? Yes. Was it not? No, I don't believe so, Your Honor. The judgment became final.  That's correct, Your Honor. The judgment became final. When did he file his state post-conviction motion? He filed the state post-conviction motion. The original post-conviction motion, Your Honor, was filed on May 8, 2008. The conviction became final on December 17, 2007 when his time to appeal expired. The letter itself wasn't sent until 2011. Okay. So that was—the letter itself wouldn't have completed. Over the two-year period. Exactly, Your Honor. So the letter itself we would submit was not a properly filed application under Florida law. As far as the issue of the court not addressing it, I don't think that is dispositive in this case. I think we can look at the form of the document itself and see that it didn't comply. But I think one of the other problems with it is that it didn't give any notice to the State Circuit Court that it was actually a petition for relief. I think the clerk had originally docketed it as a post-conviction motion and then re-docketed it as simply correspondence to the clerk. But didn't you say that—do you mean a petition for any sort of relief or a petition for— The letter, Your Honor? Yeah. It did not—it didn't give any indication that it was a petition for any sort of relief, at least on the face of it. You had to read to the bottom of the second page before you got to what he was actually asking for. And I think this is one of the reasons that state courts typically require documents to be in the form that they are is so that the judges know what's being requested, so that non-lawyer court staff knows where a particular document is supposed to go. And in this case, there was nothing on the face of it that would have required it to— that was requesting any sort of relief. And again, in addition to that, even if it could be considered a collateral application, it didn't comply with the specific requirements for a collateral application under Florida law. Let me ask you the same question I asked Ms. Middleman, which is if she's right on this issue and you're wrong, or at least we think that she's right and that you're wrong, isn't there still an exhaustion problem? Right. Then we would have to get to the question of whether the petition was exhausted, which hasn't been briefed in this appeal. It wasn't briefed in the district court because the district court determined on the face of it that it was untimely. So I think in— Did the state move to dismiss on exhaustion grounds as well or no? No. The response was limited to the timeliness. Okay. Thank you. Does the court have any additional questions? All right. Well, I will conclude there and simply request that the judgment be affirmed. Thank you very much. I just have a couple points. On the terms of the tolling, I'll be honest, I find this all very confusing, but I think that the time up until June 2011 was tolled because that's when they were going to have the evidentiary hearing, and it was at that hearing when he said he was withdrawing. So I think that the letter would have been timely, I believe, because there was a tolling from 2008, I believe, until 2011. I think Mr. Tannen's argument is that if you consider the letter motion to be some request for post-conviction relief, it was not properly filed under Florida law because it was filed more than two years after the judgment became final. I think that's what he was trying to say in one of his arguments. I don't know if that's correct or not. I think my impression was that that letter would have been timely, but the petition for belated appeal that he filed like six months later would not have been timely, but I can double-check that if you want me to do that. The other point I wanted to make was I think all the argument about Espinoza and what's required for petition for belated appeal really has nothing to do with the issue here because that type of petition concerns the timeliness and everything else of why he didn't appeal, not the merits. So even though it sounds like it's related, I don't think the holding of Espinoza has any bearing on what we're talking about today. Thank you. Thank you both very much. We appreciate it.